UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

BRANDON WOODARD,
    Plaintiff,

v.

FRANK BISIGNANO, Commissioner
of the Social Security Administration,
    Defendant.

Case No. 3:25-cv-00656

Magistrate Judge Luke A. Evans

**MEMORANDUM ORDER**

This action is before the Court pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) for judicial review of the final decision of the Commissioner of Social Security denying disability insurance benefits and supplemental income benefits under Title II and Title XVI of the Social Security Act, 42 U.S.C. §§ 401, et seq., 1381, et seq. (Doc. No. 1). The parties have consented to proceed before a Magistrate Judge pursuant to 28 U.S.C. § 636(c) (Doc. No. 4), and the matter is ripe for disposition (Doc. Nos. 12, 14, and 17). For the reasons set forth below, Plaintiff's Motion to Reverse and Remand (Doc. No. 12, "Motion to Remand") is DENIED, and the decision of the Commissioner is AFFIRMED.

I.    **Background**

Plaintiff, Brandon Woodard, filed his application for disability benefits on August 23, 2021, which alleged a disability onset date of June 8, 2019 (Doc. No. 11 at p. 245). Woodard's application was denied initially on November 15, 2021 (*Id*. at p. 419) and again upon reconsideration on January 14, 2022 (*Id*. at p. 434). On June 6, 2022, an ALJ issued a decision that Woodard was not disabled (*Id*. at p. 389). On March 28, 2023, however, the Appeals Council remanded the case for further consideration (*Id*. at p. 413). On September 28, 2023 and April 4, 2024, Woodard appeared before a second ALJ for a telephonic hearing (*Id*. at p. 245).

On June 14, 2024, an ALJ again issued a decision finding that Woodard was not disabled (*Id*. at p. 273). There the ALJ determined that Woodard (i) met the insured status requirements through June 30, 2021, (ii) had not engaged in substantial gainful activity since his alleged disability onset date on June 8, 2019, and (iii) had the following severe impairments: osteoarthritis of the right knee status post remote fracture and open reduction internal fixation, coronary artery disease status post stent placement, cardiomyopathy, heart failure, diabetes mellitus type II, peripheral neuropathy, peripheral vascular disease, gouty arthritis, obesity, major depressive disorder, generalized anxiety disorder, borderline personality disorder, and autism spectrum disorder (*Id*. at p. 247-48). However, the ALJ concluded that Woodard did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (*Id*. at p. 248). *See* 20 C.F.R. 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926.

The ALJ then determined that Woodard had the residual functional capacity to perform sedentary work within the following parameters: (1) occasional balance, stoop, kneel, crouch, and climb ramps and stairs, but never crawl or climb ladders, ropers, or scaffolds and (2) occasional exposure to vibrations, pulmonary irritants, and extreme temperatures but not unprotected heights or moving machinery (*Id*. at p. 252). *See* 20 C.F.R. 404.1567(a) and 416.967(a). While unable to perform past relevant work, the ALJ also found that Woodard could perform other work existing in significant numbers in the national economy (*Id*. at p. 271-72). That is, sedentary, unskilled occupations such as a table worker, final assembler, or general hand laborer (*Id*. at p. 273).

The Appeals Council denied review on April 30, 2025 (*Id*. at p. 9). As a result, the ALJ's June 14, 2024 decision is the final decision of the Commissioner subject to this Court's review.

2

## II. Standard of Law

This Court reviews the record to determine: (1) whether substantial evidence on the record as a whole supports the decision, and (2) whether any legal errors were committed in the decision-making process. *Miller v. Comm'r of Soc. Sec.*, 811 F.3d 825, 833 (6th Cir. 2016) (quoting *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405-06 (6th Cir. 2009)). "Under the substantial-evidence standard, the court looks to the administrative record and asks whether it contains "'sufficien[t] evidence' to support the agency's factual determinations." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019). Substantial evidence is less than a preponderance but "more than a mere scintilla" and means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Consol. Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)); *see also Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014). Moreover, even if the evidence supports a different conclusion, the decision of the ALJ must stand if substantial evidence supports the conclusion reached. *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997).

## III. Analysis

Woodard argues that the ALJ erred because she "material[ly] misrepresent[ed] the evidence, failed to evaluate the medical necessity of the [] walker[,] and failed to account for the use of the walker in the RFC assessment" (Doc. No. 12-2 at p. 9). In support, Woodard claims there are "numerous treating sources [that] specifically documented" his walker use and underlying physical limitations to his lower extremities (*Id*. at p. 10). Woodard also contends that the ALJ's RFC determination could have been substantially different had the medical necessity of the walker been properly considered (*Id*. at p. 12). More specifically, Woodard supports

documented walker use through three separate exam notes from November 2020,[1] April 2021,[2] and September 2024[3] (*Id*.).[4] Woodard then compares those three examinations against what he amounts to a mere single reference by the ALJ to the purported absence of supporting evidence in the treatment notes beyond Woodard's self-reported use of an assistive device (*Id*. at p. 9-10). A review of the ALJ decision and the administrative record, however, does not reflect the same.

### A.        Treating Sources

As an initial matter, the Court agrees with Woodard that the ALJ included an incorrect footnote—stating that the April 2021 notes constituted "the only exam that mentioned the claimant using a cane or walking stick in the medical evidence of the record" (Doc. No. 11 at p. 257)—and effectively negated the only other reference in the record during the relevant time period (*i.e*., the November 2020 exam) (*Id*. at p. 820). However, the Court does not agree that the ALJ "admits to disregarding formative evidence in the case record" (Doc. No. 12-2 at p. 12) or "overlooked" the need for an assistive device altogether (Doc. No. 17 at p. 2). Rather, the ALJ explicitly contended with the November 2020 exam in determining that the exam "did not support marked limitation in [] physical functioning" (Doc. No. 11 at p. 249) and was "consistent with the [ALJ's] residual functional capacity" determination (*Id*. at p. 260).

As for the September 2024 exam, it cannot be considered part of the record here because those notes were submitted for the first time to the Appeals Council in support of his request for

---

[1]        Robin McCoy, APRN, noted Woodard was "using a walker" (Doc. No. 11 at p. 820).
[2]        Dr. Abigail K. Debusk, DO, noted Woodard's gait was "assisted [by] walking stick (cane)" (*Id*. at p. 779).
[3]        Kayley Lazarski, PA, noted that Woodard "ha[d] been ambulating well . . . [and] plans to obtain a walker from good will today" (*Id*. at p. 31-32), and then recommended "supervision and a rolling walker . . . pending further Neurology and ID recommendations" (*Id*. at p. 32).
[4]        Relatedly, Woodard also contends that his father's function report aligns with his own function report with respect to walker-use (Doc. Nos. 11 at p. 674-691 and 12-2 at p. 11), which the ALJ directly noted in her decision (Doc. No. 11 at p. 259).

review of the ALJ's decision. *Curler v. Comm'r of Soc. Sec.*, 561 Fed. Appx. 464, 272-73 (6th Cir. 2014) (The Sixth Circuit has repeatedly refused to consider evidence submitted after the ALJ issued his decision when reviewing the decision for substantial evidence). Even if the Court were to entertain Woodard's argument that, without relying on the September 2024 exam notes, they provide "additional confirmation" of the purported error (Doc. No. 17 at p. 8), the Court neither agrees that the September 2024 notes "corroborate Woodard's ongoing complaints" (*Id*. at p. 3), nor finds it credible that the exam notes may be material such that it relates back to the relevant period (*Id*. at p. 8-9). This is especially true where the transcript from the initial September 28, 2023 hearing reflects Woodard's own testimony that he didn't use an assistive device when walking (Doc. No. 11 at p. 313) and the September 2024 exam confirms that *only a few days prior to Woodard's admission* he "started to develop weakness in his bilateral lower extremities, [which] progressed to the point where he could not bear weight on his legs at all . . . [and] [h]e denie[d] any loss of sensation (*Id*. at p. 33).

Further, upon review of the final decision at issue, the ALJ repeatedly supported her decision with findings of consistent normal physical examinations (*Id*. at p. 248-254), inconsistent use of an assistive device (*Id*. at p. 248-49), and a record that does not support Woodard's allegations as to the severity of his limitations (*Id*. at p. 259-60). By example, the ALJ directly addressed the April 2021 exam in stating that he "used a walk stick (cane) but his exam was otherwise normal including normal sensation" (Doc. No. 11 at p. 257). The ALJ also noted that "[t]he evidence does not satisfy the criteria of sections 1.17 or 1.18" because "there is no evidence of the documented medical need for an assistive device or even the consistent use of any assistive device in treatment notes" (*Id*. at p. 248-49). Woodard's misplaced emphasis on the ALJ "not cit[ing] normal clinical findings as her basis for rejecting the walker [but rather] cit[ing] the

purported absence of evidence in treatment notes" (Doc. No. 17 at p. 4) clearly ignores unfavorable evidence within the administrative record and the ALJ's final decision.

### B.      Assistive Device

Next, the Court will address Woodard's argument with respect to medical necessity—*i.e.*, that the ALJ's failed to "mention [] any assistive device, despite evidence of walker use and significant physical limitations"—and resulting detriment to the RFC assessment (Doc. No. 12-2 at p. 13). Here, Woodard fails to produce sufficient documentation establishing a need for an assistive device. That is, neither the November 2020 nor April 2021 exams include any recommendation for an assistive device but rather merely note that Woodard presented with a walker (Doc. No. 11 at p. 779 and 820). *See Jones v. Comm'r of Soc. Sec.*, No. 19-2180, 2020 WL 2930716, at *5 (6th Cir. June 3, 2020) (reasoning that "a single notation of 'cane' cannot possibly provide 'the circumstances for which [the assistive device] is needed'" under SSR 96-9p). Even if the Court were to consider the September 2024 exam, despite such evidence being well after the relevant time period,[5] there is only a mere indication for a "rolling walker" without more (*Id*. at p. 32). *See Hale v. Berryhill*, No. 3:15-0443, 2017 WL 3130578, at *10 (M.D. Tenn. July 24, 2017) (determining that a mere indication of an order for an assistive device, four months after the relevant time period, does not establish material evidence without further explanation, and that such new evidence would not change the decision upon remand).

To be clear, the sources cited by Woodard does not support the contention that an assistive device was medically necessary when there is no explanation as to why the assistive device was required. SSR 96-9p ("To find that a hand-held assistive device is medically required, there must

---

[5]      Woodard met the insured status requirements through June 30, 2021 and had not engaged in substantial gainful activity since his alleged disability onset date on June 8, 2019 (*Id*. at p. 247).

be medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed (i.e., whether all the time, periodically, or only in certain situations; distance and terrain; and any other relevant information)"). Further, due to various treatment notes showing normal physical examinations (*Id.* at p. 248-254) and a record that "simply does not support the severity of limitation alleged by [Woodard]" (*Id.* at p. 259-60),[6] the ALJ was not required to discuss minimal evidence cited in the November 2020 nor April 2021 exam notes because no other evidence in the record supported a finding that an assistive device was medically necessary. *Jones*, 2020 WL 2930716, at *5 ("Because the ALJ sufficiently explained his residual functional capacity finding and [Plaintiff] failed to produce evidence demonstrating a medical need for a cane, the ALJ did not err in failing to explicitly consider whether [Plaintiff] needed a cane."). That the ALJ then failed to account for such an assistive device cannot go to the heart of the RFC assessment as Woodard contends (Doc. No. 17 at p. 9-10). For the above reasons, one inaccurate footnote alone is insufficient to bely the ALJ's evaluation and substantial evidence supports the ALJ's findings.

## IV.     Conclusion

Accordingly, the Motion to Remand is DENIED (Doc. No. 12), and the decision of the Commissioner is AFFIRMED. The Clerk of the Court is DIRECTED to close this case.

It is so ORDERED.

_____
LUKE A. EVANS
United States Magistrate Judge

---

[6]     Upon review, the ALJ took note of no less than 14 exhibits that reflect normal gait, range of motion, sensation, and/or physical exams (*Id.* at p. 248-54).